UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OLYMPIC TUG & BARGE, INC., a Washington corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JUSTIN TODD, an individual,<br><br>　　　　　Defendant. | **IN ADMIRALTY**<br><br>Case No. _____<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

Comes now Olympic Tug & Barge, Inc., and alleges as follows:

## I.　　PARTIES

1.1　　Olympic Tug & Barge, Inc. ("Olympic"), is and was at all pertinent times a corporation organized and existing under the laws of Washington. Olympic is and was at all pertinent times the owner of the towing vessel LISSY TOO (the "Vessel").

1.2　　Justin Todd ("Defendant") was a seaman employed by Olympic in January 2019 as an at-will employee.

## II.　　JURISDICTION AND VENUE

2.1　　This is an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 to determine whether Defendant is entitled to maintenance and cure benefits to be paid according to maritime law, which is a question of actual controversy between the parties.

COMPLAINT FOR DECLARATORY JUDGMENT:
CASE NO. _____ - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

PDX\134828\269620\CRC\33277728.1

2.2    This action is an admiralty and maritime dispute within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the Court has jurisdiction over this action under 28 U.S.C. § 1333.

2.3    Venue is proper in this Court as the alleged incident took place on the Columbia River, upon a vessel moored out of Seattle and owned by a company residing in the same. Furthermore, upon Olympic's understanding and belief, Defendant is a foreign resident of the Republic of Colombia without residential claim to any one judicial district within the United States.

### III.    FACTS

3.1    Olympic first hired Defendant in 2002. Since that time, Defendant has worked off and on, in some capacity, for either Olympic or another subsidiary of the larger parent company, Centerline Logistics Corporation (interchangeably referred to herein as "Olympic").

3.2    In December of 2021, Defendant tendered notice to Olympic for the first time of an alleged work-related injury reported to have taken place on January 7, 2019. Defendant disclosed this information through the submission of a Personal Injury Report, dated December 9, 2021 (the "PI Report").

3.3    The PI Report details a lower back and left shoulder injury allegedly sustained by Defendant while working aboard a barge, the HMS 2604 (the "Barge"). Tug Logs from the date in question identify that Defendant was captaining the towing vessel LISSY TOO. On this date, the LISSY TOO worked in conjunction with the Barge, which Defendant moved between in the performance of his duties.

3.4    The PI Report, which Defendant himself filled out, alleges that Defendant injured his back while lifting and positioning tires on the side of the Barge. The PI Report specifically notes that no other individual witnessed the injury take place. (See, PI Report, attached hereto as Exhibit A).

COMPLAINT FOR DECLARATORY JUDGMENT:
CASE NO. _____ - 2

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

PDX\134828\269620\CRC\33277728.1

3.5     Tug Logs from the alleged incident date, as well as logs from the days directly preceding and following, do not refer to the incident detailed in the PI Report. As the assigned captain of the Vessel on January 7, 2019, it was Defendant's duty to include all relevant occurrences in the Tug Log, including any injury-causing incidents. Defendant generated a Tug Log for January 7, 2019, which includes 12 entries in the 'Event Log' section, but none regarding a work-place injury. Defendant electronically signed and submitted the Tug Log to Olympic. (See, January 7, 2019 Tug Log, attached hereto, as Exhibit B).

3.6     In the days, months and years that followed, Defendant made no other report to Olympic, official or otherwise, regarding a work-related injury aboard the Vessel or Barge. Instead, Defendant worked the remaining days he was scheduled for that specific tour of duty. He continued working his usual schedule of 21 days on followed by 21 days off throughout 2019 and until September 2020, when he left the vessel to go on vacation.

3.7     Defendant now claims that while on vacation in 2019 and 2020, he made regular trips back to the Republic of Colombia, during which time he sought treatment for his alleged back injury.

3.8     After first claiming in December 2021 that his alleged January 2019 back injury was work-related, Defendant provided several medical records from Colombia to Plaintiff. None of those records state that Defendant's alleged back injury was work-related, let alone that he injured his back while positioning tires as now alleged. In fact, several of them expressly state that the claimed injury was not work-related.

3.9     In a medical record dated November 25, 2019, Defendant's doctor in Colombia provided the following recommendation: "Avoid manually lifting and carrying weights greater than 12 kg. Avoid repetitive or sustained flexion, extension, and rotation movements. Avoid use of tools that generate high impact or vibration of the whole body. Avoid prolonged walking or repetitively going up and down stairs." Defendant's doctor regularly provided this recommendation until at least August of 2021.

COMPLAINT FOR DECLARATORY JUDGMENT:
CASE NO. _____ - 3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

PDX\134828\269620\CRC\33277728.1

3.10     In spite of his doctor's recommendations, Defendant continued to perform his regular work schedule for Olympic without interruption from January 7, 2019 until September 22, 2020, Defendant's last day of work for Olympic. At no time during this period did Defendant notify Olympic that he had ever sustained a work-related injury, as he now claims, or that his doctor had recommended lifting restrictions.

3.11     In a February 17, 2021 email to Olympic, Defendant notified his employer for the first time that he was suffering from a back injury of any kind. Defendant explained that he sought 60 days off from work under the Family and Medical Leave Act ("FMLA") for treatment. (See, First Notice of Injury, attached hereto as Exhibit C). Again, Defendant did not report to Olympic that the injury in question was work-related or occurred in service to an Olympic vessel.

3.12     The 'Certificate of Health Care Provider' (the "HCP Certificate", attached hereto as Exhibit D) filed with the U.S. Department of Labor Wage and Hour Division to effect Defendant's FMLA request, indicates that Defendant was to receive medical treatment in the Republic of Colombia. A Colombian medical professional, Dr. Felipe Andres Mejia Sanchez, signed the HCP Certificate attesting to Defendant's need for treatment. The HCP Certificate makes no mention of the underlying injury being work-related. The Defendant never returned to active duty for Olympic.

3.13     On December 9, 2021, Defendant notified Olympic for the first time that he contends that his back injury was caused by a work-related incident on January 7, 2019. Nearly three years separate the date of Defendant's alleged work-related incident and Defendant's initial reporting of the same to Olympic, less than one month before Defendant's maritime personal injury claim for damages would be time barred.  46 U.S.C. § 30106.

/ /

/ /

COMPLAINT FOR DECLARATORY JUDGMENT:
CASE NO. _____ - 4

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

PDX\134828\269620\CRC\33277728.1

## IV. CLAIM FOR RELIEF

4.1 Defendant is not entitled to maintenance and/or cure, as supported by the fact that the alleged incident was unwitnessed, and it remained unreported to Olympic for nearly three years, during most of which Defendant continued working his regular schedule and performing all of his usual duties for Olympic without incident. Furthermore, any number of non-work-related factors may have caused Defendant's alleged back injury and, in fact, his medical records state unequivocally that his condition is not work-related.

4.2 For these reasons, Olympic has no obligation under maritime law to pay Defendant any maintenance and/or cure.

4.3 There is an actual controversy between Olympic and Defendant concerning whether Defendant is entitled to maintenance and/or cure.

4.4 A prompt and speedy declaration of the rights and duties of the parties is necessary and appropriate at this time, considering the clearly delineated controversy outlined in this complaint for declaratory judgment.

## V. PRAYER

WHEREFORE, Olympic prays for judgment as follows:

1. That the Court declare that Olympic has no obligation under maritime law to pay maintenance and/or cure to Defendant;

2. For the costs of suit incurred herein ;and

3. For such other and further relief as the Court may deem just and appropriate in this case.

//
//
//
//
//

COMPLAINT FOR DECLARATORY JUDGMENT: CASE NO. _____ - 5

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

PDX\134828\269620\CRC\33277728.1

Dated this 25th day of March, 2022.

                        SCHWABE, WILLIAMSON & WYATT, P.C.

By: /s/ Philip Lempriere
Philip Lempriere, WSBA #20304
Email: PLempriere@schwabe.com

By: /s/ Colin Crug
Colin Crug, WSBA #52743
Email: CCrug@schwabe.com
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone:   206.622.1711
Facsimile:    206.292.0460
*Attorneys for Plaintiff Olympic Tug & Barge, Inc.*

COMPLAINT FOR DECLARATORY JUDGMENT:
CASE NO. _____ - 6

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

PDX\134828\269620\CRC\33277728.1

# EXHIBIT A



| | | |
|---|---|---|
| | **Personal Injury Report** | FORM 02-060P-1 |
| | | Revision 06/2020 |

Tug: Lissy Too    Barge: HMS 2604    Date: 12-9-2021

### PERSONAL INFORMATION
Name of Injured Person: JUSTIN TODD

### INJURY INFORMATION
| | |
|---|---|
| Supervisor/Person-In Charge at Time of Injury: | SELF |
| Where did the injury occur? | ON BARGE |
| Vessel Official #: | |
| Date of Injury: | 1-7-2019 |
| Time of Injury: | MORNING |
| What part of the body was injured? | LOWER BACK / LEFT SHOULDER |
| Did person lose consciousness? | NO |
| If so, how long | |

### INCIDENT INFORMATION
What was the person doing at the time of the injury? MOVING TIRES ON SIDE OF BARGE

Describe in detail what happened: BARGE NEEDED TO GET READY FOR NEW CONTRACT. FENDERING WAS BEING MOVED + ADDED TO BARGE BEFORE IT WENT TO WORK

Did anyone else see the injury? ☒ Yes  ☐ No   HE WAS THERE, NOT ACTUALLY WITNESSING (cut off)

If so, list name, address and telephone # of witnesses:

| Name | Telephone # |
|---|---|
| ANDREW BUTTERFIELD | 360 904 0659 |
| | |
| | |

| | | | |
|---|---|---|---|
| Was First Aid Provided? | NO | If so, who provided it? | |
| Was injured person taken off the vessel? | NO | | |

**Centerline Logistics**     Page



| | FORM 02-060P-1 |
|---|---|
| **Personal Injury Report** | Revision 06/2020 |

Describe fully person's current complaints related to this injury....Be specific:

AT THE TIME THOUGHT I HAD JUST OVERDONE IT AND PULLED OR STAINED A MUSCLE (S) I HAVE A COLLAPSED DISC AND 3 COMPRESSED DISCS IN MY BACK

Captains Signature: _____

Safety Management System (SMS) Reference: EMG 02-060P: Medical Emergency Response Procedures and Drills – PROCEDURE

**Centerline Logistics**                                Page

Scanned with CamScanner

# EXHIBIT B

# DAILY TUG LOG



| | | | |
|---|---|---|---|
| **Company:** OTB Portland | | **Tug:** | Lissy II |
| **Master:** Justin Todd | | **Barge:** | |
| **Log Date:** January 7, 2019 | | ☐ Equipment Tests Performed Per 33CFR164.80 | |

## MAINTENANCE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☑ VHF Radio | ☑ Engine Alarms | ☑ Navigation Lights | ☑ Publications Updated | ☐ Gyro | ☑ Radar(s) | ☑ NTM'S |
| ☑ Search Light(s) | ☑ Charts Updated | ☑ Joysticks/Wheel | ☑ Depth Indicator | ☑ Thrust Angle | ☑ Compass | ☑ Bilge Alarm |
| ☑ Steering System | ☑ GPS | ☑ General Alarm | ☑ Whistle(s) | ☑ Towlines/Wires Inspected | ☑ Engine Gauges | ☐ Auto Pilot |

## VGP
Were any deficiencies noted? **No**

## Coastal Designation
Coastal voyages on log? **No**       Near coastal voyages on log? **No**

## EVENT LOG

| Start Time | Stop Time | Job # | Remark | Channel | Coding |
|---|---|---|---|---|---|
| 00:00 | 18:00 | | Maintence on Lissy and Grizzly | | Maintenance Time Non-Billable Time |
| 00:01 | 00:01 | | New Watch Day @ OTB Sec Checks all ok | | Security Round Time Non-Billable Time |
| 10:00 | 10:00 | | A.Chruchill off | | Crew Change Time Non-Billable Time |
| 12:00 | 12:00 | | D.Butterfield off | | Crew Change Time Non-Billable Time |
| 13:00 | 13:00 | | Daily er | | Daily Engine Room V2 Reporting |
| 13:01 | 13:01 | | weekly er | | Weekly Engine Room Reporting |

## CREW

| Name | Position | Start Time | Stop Time | Hours |
|---|---|---|---|---|
| Justin Todd | Captain | 00:01 | 23:59 | 12 |
| Rest Hours: 1R - 11.98 | 7R - 83.98 | MINR - 0 | | |
| Work Hours: *None Listed* | | | | |
| Andrew Butterfield | Captain | 00:01 | 12:00 | 6 |
| Rest Hours: 1R - 5.98 | 7R - 84.92 | MINR - 4.02 | | |
| Work Hours: *None Listed* | | | | |
| Adam Churchill | Captain | 00:00 | 10:00 | 0 |
| Rest Hours: 1R - 0 | 7R - 95.8 | MINR - 10 | | |
| Work Hours: *None Listed* | | | | |

## OFFSHORE REPORT

| | | | |
|---|---|---|---|
| Miles Day: | | Miles Trip: | |
| Avg. Speed Day: | | Avg. Speed Trip: | |
| Distance To Go: | | Hours Run Trip: | |
| Detention Day: | | Tow Wire Hours: | |
| Barge #1 FWD: | | #1 AFT: | |
| Barge #2 FWD: | | #2 AFT: | |
| Barge #3 FWD: | | #3 AFT: | |
| Barge #4 FWD: | | #4 AFT: | |
| Tug #1 FWD: | | #1 AFT: | |

## FUEL USED

| Fuel Used: | 0 | Fuel O/B: | 8275 | Lube Used: | 0 | Lube O/B: | 0 |
|---|---|---|---|---|---|---|---|

## FUEL TRANSFERS & PURCHASES

| Type | Fuel/Lube | Vessel From | Vessel To | Gallons | PO # |
|---|---|---|---|---|---|

## Oily Waste Movements

| Starting Bilge Waste: | 50 | Ending Bilge Waste: | 50 | Waste Bags: | 0 | Starting Waste Oil: | 0 | Ending Waste Oil: | 0 |
|---|---|---|---|---|---|---|---|---|---|

| Time | Type | Action | Tank Name | Discharge location | Remarks | Bags/Gallons |
|---|---|---|---|---|---|---|

Masters Signature:   Digitally Signed - Justin Todd       Date:   1/7/2019

# EXHIBIT C

**From:** Justin Todd <jtodd@3jindustrialservices.com>
**Sent:** Wednesday, February 17, 2021 9:38 AM
**To:** Sven Titland <stitland@centerlinelogistics.com>
**Subject:** Justin update

Hey bud,
Haven't heard back from you. I have some medical stuff going on. I have an issue in my back and won't be able to come to work in March. I got 4 injections in it last week. It didn't respond as well as they had hoped. I have another appointment in 2 weeks to see about doing something different with it. Worst case, I need surgery, best case they tell me it can't get worse and do a procedure to have the nerve not be able to transmit pain. It's been hurting awhile and I had been powering through it. The original appointment was back last year but I was stuck because of Covid in the states. So get back when you can or just respond here. I'm sure you are up to your neck in stuff. I'm sorry I have to pile more on you.


Capt. Justin Todd

Gerente
3J Industrial Services S.A.S.
Barranquilla, Colombia
USA +1 346-303-3338
Col +57 318 700 3662

# EXHIBIT D

| Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act | U.S. Department of Labor Wage and Hour Division |  |
|---|---|---|

**DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR. RETURN TO THE PATIENT.**

OMB Control Number: 1235-0003
Expires: 6/30/2023

The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. 29 U.S.C. §§ 2613, 2614(c)(3); 29 C.F.R. § 825.305. The employer must give the employee **at least 15 calendar days** to provide the certification. If the employee fails to provide complete and sufficient medical certification, his or her FMLA leave request may be denied. 29 C.F.R. § 825.313. Information about the FMLA may be found <u>on the WHD website at www.dol.gov/agencies/whd/fmla.</u>

## SECTION I – EMPLOYER

Either the employee or the employer may complete Section I. While use of this form is optional, this form asks the health care provider for the information necessary for a complete and sufficient medical certification, which is set out at 29 C.F.R. § 825.306. **You may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308.** Additionally, you **may not** request a certification for FMLA leave to bond with a healthy newborn child or a child placed for adoption or foster care.

Employers must generally maintain records and documents relating to medical information, medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

(1) Employee name: __Justin  Lewis  Todd__
   First    Middle    Last

(2) Employer name: __Centerline Logistics - OTB-AK__    Date: __02/19/21__ (mm/dd/yyyy)
   (List date certification requested)

(3) The medical certification must be returned by __03/06/21__ (mm/dd/yyyy)
   (Must allow at least 15 calendar days from the date requested, unless it is not feasible despite the employee's diligent, good faith efforts.)

(4) Employee's job title: __Captain__    Job description (☒ is / ☐ is not) attached.
   Employee's regular work schedule: __2 weeks on/2 weeks off, 12 hour work days__
   Statement of the employee's essential job functions: _____

(The essential functions of the employee's position are determined with reference to the position the employee held at the time the employee notified the employer of the need for leave or the leave started, whichever is earlier.)

## SECTION II - HEALTH CARE PROVIDER

Please provide your contact information, complete all relevant parts of this Section, and sign the form. Your patient has requested leave under the FMLA. The FMLA allows an employer to require that the employee submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to the serious health condition of the employee. For FMLA purposes, a "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves *inpatient care* or *continuing treatment by a health care provider*. For more information about the definitions of serious health condition under the FMLA, see the chart on page 4.

You may, but are **not required** to, provide other appropriate medical facts including symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment. Please note that some state or local laws may not allow disclosure of private medical information about the patient's serious health condition, such as providing the diagnosis and/or course of treatment.

Scanned with CamScanner

Employee Name: Justin Lewis Todd

Health Care Provider's name: *(Print)* Felipe Andres Mejía Sanchéz

Health Care Provider's business address: Calle 80 # 49C -15, Barranquilla, Atlantico.

Type of practice / Medical specialty: Anestesiologo, especialista de dolor cuidado paleativo.

Telephone: (+57) 3015507658  Fax: (   ) NA   E-mail: info@drfelipemejia.com

## PART A: Medical Information

Limit your response to the medical condition(s) for which the employee is seeking FMLA leave. Your answers should be your **best estimate** based upon your medical knowledge, experience, and examination of the patient. **After completing Part A, complete Part B to provide information about the amount of leave needed.** Note: For FMLA purposes, "incapacity" means the inability to work, attend school, or perform regular daily activities due to the condition, treatment of the condition, or recovery from the condition. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b).

(1) State the approximate date the condition started or will start: __03-07-2021__ *(mm/dd/yyyy)*

(2) Provide your **best estimate** of how long the condition lasted or will last: __60 days__

(3) Check the box(es) for the questions below, as applicable. For all box(es) checked, the amount of leave needed must be provided in Part B.

☐ **Inpatient Care**: The patient (☐ has been / ☐ is expected to be) admitted for an overnight stay in a hospital, hospice, or residential medical care facility on the following date(s): _____

☒ **Incapacity plus Treatment**: *(e.g. outpatient surgery, strep throat)*
Due to the condition, the patient (☐ has been / ☒ is expected to be) incapacitated for *more than three* consecutive, full calendar days from __3-07-2021__ *(mm/dd/yyyy)* to __05-01-2021__ *(mm/dd/yyyy)*.

The patient (☒ was / ☒ will be) seen on the following date(s): __2-22-2021__, __3-25-2021__, __4-22-2021__

The condition (☐ has / ☐ has not) also resulted in a course of continuing treatment under the supervision of a health care provider *(e.g. prescription medication (other than over-the-counter) or therapy requiring special equipment)*

☐ **Pregnancy**: The condition is pregnancy. List the expected delivery date: _____ *(mm/dd/yyyy)*.

☒ **Chronic Conditions**: *(e.g. asthma, migraine headaches)* Due to the condition, it is medically necessary for the patient to have treatment visits at least twice per year.

☐ **Permanent or Long Term Conditions**: *(e.g. Alzheimer's, terminal stages of cancer)* Due to the condition, incapacity is permanent or long term and requires the continuing supervision of a health care provider (even if active treatment is not being provided).

☒ **Conditions requiring Multiple Treatments**: *(e.g. chemotherapy treatments, restorative surgery)* Due to the condition, it is medically necessary for the patient to receive multiple treatments.

☐ **None of the above**: If none of the above condition(s) were checked, (i.e., inpatient care, pregnancy) no additional information is needed. Go to page 4 to sign and date the form.

Page 2 of 4                                                                              Form WH-380-E, Revised June 2020

Scanned with CamScanner

Employee Name: Justin Lewis Todd

(4) If needed, briefly describe other appropriate medical facts related to the condition(s) for which the employee seeks FMLA leave. *(e.g., use of nebulizer, dialysis)* _____

## PART B: Amount of Leave Needed

For the medical condition(s) checked in Part A, complete all that apply. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your **best estimate** based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage.

(5) Due to the condition, the patient (☐ had / ☐ will have) **planned medical treatment(s)** (scheduled medical visits) *(e.g. psychotherapy, prenatal appointments)* on the following date(s): 3-30-2021

(6) Due to the condition, the patient (☒ was / ☒ will be) **referred to other health care provider(s)** for evaluation or treatment(s).

State the nature of such treatments: *(e.g. cardiologist, physical therapy)* Physical therapy

Provide your **best estimate** of the beginning date 4-10-2021 *(mm/dd/yyyy)* and end date 5-01-2021 *(mm/dd/yyyy)* for the treatment(s).

Provide your **best estimate** of the duration of the treatment(s), including any period(s) of recovery *(e.g. 3 days/week)* 60 days (3-7-2021 to 5-01-2021)

(7) Due to the condition, it is medically necessary for the employee to work a **reduced schedule**. NO

Provide your **best estimate** of the reduced schedule the employee is able to work. From _____ *(mm/dd/yyyy)* to _____ *(mm/dd/yyyy)* the employee is able to work: *(e.g., 5 hours/day, up to 25 hours a week)*

(8) Due to the condition, the patient (☒ was / ☒ will be) **incapacitated for a continuous period of time**, including any time for treatment(s) and/or recovery.

Provide your **best estimate** of the beginning date 02-22-2021 *(mm/dd/yyyy)* and end date 05-01-2021 *(mm/dd/yyyy)* for the period of incapacity. tentatively

(9) Due to the condition, it (☐ was / ☐ is / ☐ will be) medically necessary for the employee to be absent from work on an **intermittent basis** (periodically), including for any episodes of incapacity i.e., episodic flare-ups. Provide your best estimate of how often (frequency) and how long (duration) the episodes of incapacity will likely last.

Over the next 6 months, episodes of incapacity are estimated to occur 2 times per (☐ day / ☐ week / ☐ month) and are likely to last approximately 30 (☐ hours / ☒ days) per episode.
☒ year

Scanned with CamScanner

Employee Name: Justin Lewis Todd

## PART C: Essential Job Functions

If provided, the information in Section I question #4 may be used to answer this question. If the employer fails to provide a statement of the employee's essential functions or a job description, answer these questions based upon the employee's own description of the essential job functions. An employee who must be absent from work to receive medical treatment(s), such as scheduled medical visits, for a serious health condition is considered to be *not able* to perform the essential job functions of the position during the absence for treatment(s).

(10) Due to the condition, the employee (☐ was not able / ☐ is not able / ☐ will not be able) to perform *one or more* of the essential job function(s). Identify at least one essential job function the employee is not able to perform: Use Pike, poles, heavy lines, winches, lift heavy items, carry Heavy items, Lift hoses, Climb Ladders, and no bending and twisting

Signature of Health Care Provider: [signed] Dr. Felipe Andrés Mejía, Md. Anestesiólogo, Manejo de Dolor, RM 13064   Date 2-22-2021 (mm/dd/yyyy)

| Definitions of a Serious Health Condition (See 29 C.F.R. §§ 825.113-.115) |
|---|
| **Inpatient Care** |
| • An overnight stay in a hospital, hospice, or residential medical care facility.<br>• Inpatient care includes any period of incapacity or any subsequent treatment in connection with the overnight stay. |
| **Continuing Treatment by a Health Care Provider (any one or more of the following)** |
| **Incapacity Plus Treatment:** A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves either:<br>　○ Two or more in-person visits to a health care provider for treatment within 30 days of the first day of incapacity unless extenuating circumstances exist. The first visit must be within seven days of the first day of incapacity; or,<br>　○ At least one in-person visit to a health care provider for treatment within seven days of the first day of incapacity, which results in a regimen of continuing treatment under the supervision of the health care provider. For example, the health provider might prescribe a course of prescription medication or therapy requiring special equipment. |
| **Pregnancy:** Any period of incapacity due to pregnancy or for prenatal care. |
| **Chronic Conditions:** Any period of incapacity due to or treatment for a chronic serious health condition, such as diabetes, asthma, migraine headaches. A chronic serious health condition is one which requires visits to a health care provider (or nurse supervised by the provider) at least twice a year and recurs over an extended period of time. A chronic condition may cause episodic rather than a continuing period of incapacity. |
| **Permanent or Long-term Conditions:** A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective, but which requires the continuing supervision of a health care provider, such as Alzheimer's disease or the terminal stages of cancer. |
| **Conditions Requiring Multiple Treatments:** Restorative surgery after an accident or other injury; or, a condition that would likely result in a period of incapacity of more than three consecutive, full calendar days if the patient did not receive the treatment. |

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 15 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR. RETURN TO THE PATIENT.**

Scanned with CamScanner